E-FILED
Monday, 14 January, 2008  04:06:02 PM
Clerk, U.S. District Court, ILCD
Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT**

**SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District _Central Illinois_ |
|---|---|
| Name (under which you were convicted): _Antonio Sherrod_ | Docket or Case No.: _2:04-cr-20001_ |
| Place of Confinement: _Pollock, Louisiana_ | Prisoner No.: _14231-026_ |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. | _Antonio Sherrod_ |

### MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: _____

    _Central District of Illinois_

    (b) Criminal docket or case number (if you know): _2:04-cr-20001_

2.  (a) Date of the judgment of conviction (if you know): _2-11-2005_

    (b) Date of sentencing: _2-11-2005_

3.  Length of sentence: _2 life Sentence Plus 10 years_

4.  Nature of crime (all counts): _Count one, Carjacking with the intent to cause death, Count two, Carrying and using a firearm in the crime of violence, Count three, possession of a weapon by felon_

5.  (a) What was your plea? (Check one)

    (1)  Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

**FILED**

JAN 1 4 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8. Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9. If you did appeal, answer the following:

(a) Name of court: _Seventh Circuit Appeals Court_

(b) Docket or case number (if you know): _05-1345_

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _The Government failed to prove beyond a reasonable doubt that the vehicle had moved in interstate commerce, The Government violated Sherrod's confrontation rights, The Government violated Sherrod's 5th and 6th Amendment rights by treating first degree murder as a sentencing factor, The District Court should have ~~ordered~~ given Supplemental instructions on "intent", The police failed to honor Sherrod's miranda rights._

_____

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☑    No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _denied_

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑   No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:      Yes ❑   No ❑

(2) Second petition:     Yes ❑   No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly

why you did not: _____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the
Constitution, laws, or treaties of the United States. Attach additional pages if you have more
than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** *Trial Counsel was INEFFECTIVE for allowing false arguments
from the Government in regards to the Intrepid used in the murder.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*The pro se litigant has obtained a Vehicle Car contract. And
the contract reveals that the car the Government told the jury
was used in the murder was not Dawn Ward, like the Govern-
ment argued. The contract contradicts the Government's
theory. Also, Ms. Ward didn't buy her Gold Dodge Intrepid
until 6-19-03. So, theres no way the Government theory
was correct. Counsel knew the actual owner of the Gold
Intrepid was Kristina Kirchner.*

_____

_____

_____

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐　No ☒

(2) If you did not raise this issue in your direct appeal, explain why: *Because the car contract
couldn't be brought into the record.*

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐　No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____

_____

_____

_____

_____

**GROUND TWO:** _Trial Counsel was ineffective for allowing the perjured testimony of LT Kane to go uncorrected._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_LT Kane testified at trial about the owner of the Gold Intrepid. In which, he testified the Intrepid used in the murder belonged to Dawn Ward. LT Kane also identified ms. ward car from a picture and compare it to the car on video tape. Counsel knew this testimony was false, but yet, failed to correct it._

_____

_____

_____

_____

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: *Because my proof was outside the trial Court Record.*

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑    No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑    No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑    No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑    No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND THREE:** *Counsel was ineffective for not objecting to the misleading testimony of Lakesia Winfield.*

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

*Lakesia Winfield identified the Gold Intrepid off camera as the car that belonged to Dawn Ward. Counsel could have produced the actual owner of the Dodge Intrepid and dismissed Ms. Winfield testimony. The car contract of Ms. Ward Intrepid would prove Ms. Ward car was not used in the murder.*

_____

_____

_____

_____

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: *Because the car contract was outside the trial record.*

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏    No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _____

_____

_____

_____

_____

**GROUND FOUR:** *Counsel was ineffective for not objecting to the improper use of photographs of the shooter exiting the Gold Intrepid*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*Counsel allowed the Government to present photographs of the shooter in which was grainy and blury. The photographs violated Rule 403 because the Government use the blury photos for identification purposes. The face of the shooter was blury. The probative value of the photographs was substantially outweighed by their prejudicial impact.*

_____

_____

_____

_____

**(b)  Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: *Because Petitioner could not fully develop his ineffective claim record on direct appeal.*

**(c)  Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❏  No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❏  No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏  No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❑   No ❑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _____

_____

(d) At sentencing: _____

_____

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ❑ No ❑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ❑ No ❑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ❑   No ❑

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: _Evidentiary hearing on_
_all claims to resolve Constitutional Claims or ineffective assistance of counsel_
_also to resolve whether petitioner is entitled to post evidence_

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _January_
_10, 2008_ (month, date, year).

Executed (signed) on _January 10, 2008_ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion. _____
_____
_____

IN FORMA PAUPERIS DECLARATION

_____
[Insert appropriate court]
* * * * *

Ground five: Counsel failed to Call Tovorie Gray and John Lee as a witness for the defense.

(a)  Supporting facts.

Petitioner has recieved reports from Counsel that would've contridicted the story in regards to the murder weapon. The Government was able to argue to the jury that John Lee sold Joe Taylor the murder weapon. In this report John Lee tells Investigating Officers, Tovorie Gray sold Joe Taylor the murder weapon.

Ground Six: Counsel allowed the perjured testimony to go uncorrected when it appeared to be false.

(a) supporting facts.

Counsel knew before trial that Joe Taylor agreed to testify that Sherrod admitted to him (taylor) that he took the murder weapon. Mr. Taylor statements was used to obtain on warrant, probable cause, and also his statements was placed before the Grand Jury. At trial the Government argued to the jury Sherrod took the weapon from Mr. Taylor. Mr. Taylor denied on the stand that Sherrod took a weapon from him.

Ground Seven: Counsel violated Petitioner's Due Process rights to effective assistance of counsel when he failed to seek the proper assistance from a video enhancement expert.

(a) supporting facts.

In the case at bar, the shooter is seen exiting the rear-passenger seat of the Gold Intrepid, wearing a (Black Carthart) Jacket and blue jeans. Counsel could've had the face of that person enhanced, because who that person was that exited the car was a big dispute between the Government and defense. Had Counsel seeked to enhance the tapes the Government entire case would've been contridicted if proven Sherrod wasn't the shooter who exited the car.

Ground eight: Trial Counsel was ineffective when he failed to object to the jury instructions on Count 2, which erroneously removed first-degree murder.

Ground nine: Appellate Counsel was ineffective for failing to file a Rehearing Enbanc on the Carjacking instruction, which the Appeals Court never addressed the merits of Sherrad's claim.

Ground Ten: Counsel failed to object to the in-court identification of Shay Guttendorf, which violated Sherrad's 6th Amendment right to effective assistance of Counsel at trial, which should have been excluded under the Wade/Gilbert exclusionary rule.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of January, 2008, two copies of the foregoing were sent Federal Express, postal prepaid, addressed to:

United States District Court
Central District of Illinois
Judge Michael P. McCuskey
201 South Vine Street
Urbana, IL 61801.

Antonio Sherrod 14234-026

ISSUE I. Trial Counsel was ineffective for allowing the Government to Present false arguments, Concerning Dawn Ward's Gold Dodge Intrepid; In which, the Government argued at great length, the Car owned by Ms. Ward was used in the murder of Steven Prendergast, which violated Sherrod's Due process rights to a fair trial..

Trial Counsel's omissions, when viewed as a whole, deprived Sherrod of a meaningful defense and the due Process of a trial that was a truthfinding process, Contrary to the Sixth Amendment as interpreted in Strickland v. Washington, 466 U.S. 688 (1984); U.S. v. Cronic, 466 u.s. 648, 658-59, 104 Sct 2039, 80 LEd 2d 657 (1984).

(A).    From commencement of trial the jury was able to hear arguments in regards to a gold Intrepid that was used in the murder of STEVEN PRENDERGAST. The Dodge Intrepid was a Key factor in the prosecution's case, because the shooter exited this Dodge Intrepid, not concealing his face. (See ex A-1). Moments later the shooter returns to the rear-passenger seat to retrieve a black Carthart Jacket. (see Ex A-2). The black hoddie was located with the murder weapon. (see Ex A-3). Throughout the entire trial the Government was focused on the Dodge Intrepid.

(Ex A-4) T.R. 617-18, Opening Summation by the Government:
Meanwhile, at the same time, about, as I said, a half hour away in Kankakee, thats where the defendant lived. He lived at a residence at 333 Wildwood. And he dated a woman by the name of Lakesia Winfield. He was unemployed. He dated ms winfield, had no

(1).

Car. And his best friend, the person he spent most of his time with, was a man by the name of Derrick Crawford. Mr. Crawford also had no car, but he would often borrow his girlfriend— Mr. Crawford would often borrow his girlfriend, Dawn Boyd's car. That car was a late 1990s model or early 2000 model Dodge Intrepid, tan or gold in color. The defendant and Mr. Crawford would often be in that vehicle and Mr. Crawford driving. And on March 16, 2003, that's exactly what was going on.

Had Counsel been functioning as Counsel guaranteed by the Sixth Amendment, U.S. V. Cronic, (quoted Source omitted), AUSA Timothy Boss, wouldn't of been allowed to present the false theory to the jury. The jury was deceived by the prosecution only because counsel failed to bring forth the truth, in regards to the actual owner of the Dodge Intrepid.

(Ex-A-5 T.R. 619) Prosecution Opening Summation:

And, Shortly thereafter, that Intrepid pulled away from the gas pump, picked up the person who had gotten out and put the dark-colored coat on, and then encircled the same pump where Mr. Prendergast's Cadillac was. That Dodge Intrepid was owned by the girlfriend of Derrick Crawford. (see Ex A-6) which is a retail Contract to the Dodge Intrepid Purchased by Dawn Ward. Ms Ward didn't have her Dodge Intrepid 3-16-03, like the Government said. Ms Ward Purchased her car 3months and 3days after the death of Mr. Prendergast. There's no way her car was used in the murder. This evidence contradicts the prosecution's entire theory.

The Government's remarks infected Sherrod's trial with deception. The opening and Closing Summation by the Government was

(2)

supported by (2) witnesses, who corroborated the Government's theory, by testifying and identifying the Gold Intrepid off tape to belong to Dawn Ward. The effect these remarks had on the jury deliberations is unknown. Of course, the jury was under the impression that the gold Dodge Intrepid belonged to Dawn Ward, and; Derrick Crawford and Antonio Sherrod was in Dawn's car, and the passenger (Sherrod), exited Dawn's car wearing the black jacket that was found with the murder weapon. After the prosecution came to the conclusion that the Dodge Intrepid belonged to (Dawn Ward), who was never called as a witness to corroborate the Government's theory, Prosecutor was able to insert arguments to link Petitioner to being the shooter who exited the gold Intrepid.

(Ex A-07-T. T.R. 1438, 10-12) - (1440, line 9) Closing summation:

This case is about whether the person who got out that car committed a murder was him. And on that question, there is no doubt.

T.R. 1440: You can look for yourselves; the person who got out that car with the black hoodie matches the description of the defendant.

(Ex A-8  T.R. 1479-1480)

No proof that the defendant got out of that Intrepid? No Proof? It was his best friend's girlfriend's car. He was always with his best friend. When he was with his best friend in that car, he was a passenger. The person who got out of that car wore a black hoodie. The two people who identified the defendant, the defendant, said that the person they identified was wearing a black hoodie and black coat. No evidence that the defendant got out of that car? You decide that one.

(3).

Ex A-9, T. TR. 1482, 13-16. A gold Intrepid driven by his girlfriend --- his best friend's girlfriend. A passenger gets out. He rides as a passenger. The person that gets out matches the description of him. See, Smith v. Phillips, 455 U.S. 209, 219 (1982); U.S. v Kennedy (quoted Source omitted), Prosecutorial misconduct requires conduct that prejudically affects defendant's substantive rights. The misconduct in this case was so pronounced and persistent that it permeated the entire atmosphere of Sherrod's trial and it prejudiced the defendant. (quoting Simpson v. Jones, 238 F.3d 399, 409 (6th Cir 2002))), U.S. v. Mabrook, 301 F.3d. 503, 509 (7th Cir 2002) Counsel, and Government denied Petitioner his 5th and 6th amendment rights to have a fair trial. Defense Counsel Knew beforehand, the Gold Intrepid off camera belonged to Kristina Kirchner, and counsel failed to call Mrs. Kirchner as a witness for the defense. The government, through the power of subpoena's and access to DMV through due diligence, could have Known MS. Ward's car wasn't used in the murder of Mr. Prendergost. Because she didn't own the car at that time.

(1.) Counsel was ineffective for allowing the Government to present a false theory, also; for allowing it to go uncontested, when he could have proven the entire theory to be false, but failed to do so.

(2.) AUSA Timothy A. Bass could of avoided manipulating the jury with a false theory. Had the government enhanced the License plates off the Gold Intrepid, it would of been a proven fact who the car belonged to, and also, who the shooter was that exited the rear passenger seat. And the false arguments linking Sherrod to be the shooter, would of never been placed before the jury; enhancement would of proven who the actual Shooter was, that exited the Gold- Intrepid.

(4)

(3.) Under the United States Constitution, the Due Process Clause guarantee the defendant a fair and impartial trial. The defendant's trial was contrary to the 5th amendment, and 6th amendment.

(B).    Counsel was ineffective for allowing the perjured testimony of LT. Kane to go uncorrected when it appeared to be false, which violated Sherrod's 5th Amendment right to a fair trial, and 6th Amendment right to effective assistance of Counsel.

Perjury is committed when a witness testifying under oath or affirmation gives false testimony concerning a material matter with the "willful Intent" to provide false testimony. In determining what Constitutes LT. Kane's perjury, movant will rely upon the definition that has gained general acceptance and common understanding under the Federal Criminal Statue 18. U.S.C. 1621. In Mooney v. Holohan, 294 U.S. 103, 112 (1935), this Court stated that due Process is violated:

if a state has contrived a conviction through the pretense of a trial which in truth but used a means of depriving a defendant of liberty through a deliberate deception of Court and Jury by the presentation of testimony Known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.

(5)

In the case at bar, there was an element of 'deliberate misconduct' from agent 'Kane' misleading the trier of facts by presenting untruthful testimony concerning a gold Dodge Intrepid, which was used in the murder of Steven Prendergast.

$(Ex \ A-10 \ T.TR \ 1251-1254)$
    THE Court:

Q    Were you able to determine whether or not a Dawn Ward owned a Gold or tan-colored Dodge Intrepid?
A    Yes, sir.
Q    Did she own one prior to March 16, 2003?
A    Yes, Sir.

It was obvious to the Government that the witness, agent Kane's answer was untrue, the Government and Counsel failed to correct since they both knew, or should have learned through Dawn Ward that she did not own the Dodge Intrepid agent Kane swore to under the penalty of perjury. Furthermore, movant recently obtained the vehicle's purchased contract, and it shows ms. Ward Brown Dodge Intrepid was bought June 19, 2003.

Q    Let me show you Government Exhibit 22Ø and 22A. Do you recognize those?
A    yes, sir.
Q    what are those?
A    These are photographs of a vehicle that's -- was owned by Dawn Ward. It's an off-color gold Dodge Intrepid that's been stripped.

(6)

Q    And when were those photographs taken?

A    Last week.

Q    Has that vehicle only within the last two weeks been located?

A    Yes, sir.

Q    And do they accurately depict at least the remains of the vehicle that was identified as belonging to a Dawn Ward?

A    Yes, sir.

        Mr. Bass: Your Honor, I'd move to admit 22 Q and 22 R.

        Defense trial Counsel objected to the admittance of 22 Q and 22 R. Once the objection was overruled the court allowed the Government to present 22 Q and 22 R to the jury, and compare them to the car-off video surveillance. One-by-one, each juror compared the resemblance.

Q    Lieutenant Kane, that 22 Q, is that one of the photographs I just showed you?

A    Yes.

Q    Can we flip back to where we stopped on Government exhibit 17. All right. And let it play forward till it pulls around to where the side is shown.

        ( Brief Pause in Proceedings. )

Q    Move it forward. Advance it forward. Stop right there. Lieutenant Kane, is that the same vehicle we just saw a moment ago parked at the gas pump on the other side of the Cadillac?

A    Yes, sir.

(7)

**Q**    Now I'm going to show you 22B. Is that a picture of the side of that same vehicle shown in 22 A?

**A**    yes

Eventhough trial Counsel objected to the admittance of the photographs of Ms. Ward's vehicle into evidence, that does not cover the fact; he failed to call Ms. Ward as a witness, or call Mrs. Kirchner as a witness, which could of put the case in a total different light.

The point is, Lieutenant Kane Lied to the jury about a material matter concerning an important piece of evidence. The evidence inwhich was used to determine that Petitioner was the soul shooter who exited the rear passenger seat. The Government was obliq to insert prejudicial statements of that nature, only because his case agent (Lieutenant Kane) had him under the impression that the vehicle belonged to Ms. Ward, just like he deceived the jury. The misconduct in this case is Clear. There's no way an officer with over 14 years of experience and investigating cases at this level wouldn't have Checked DMV to see if Ms. Ward owned a Gold Dodge Intrepid 3-16-03. Lieutenant Kane is the same officer that Contacted Special Agent Kevin Rollins to determine where Mr. Prendergast Cadillac had been manufactured from. So, he was versed in the Field fairs tracking down VIN numbers and things of that nature. Whoever Located Ms. Ward's vehicle, had to contact either Ms. Ward, Quality cars & trucks, or her insurance company. Otherwise; how would the investigating agent know where to go to track down the vehicle if (He) or (she) didn't speak to someone who knew Ms. Ward didn't own a gold Intrepid 3-16-03.

(8)

(C).

Counsel was ineffective for not objecting to the misleading testimony of Lakesia Winfield concerning her knowledge of A Gold Dodge Intrepid owned by Dawn Ward. And her false identification of ms ward vehicle off Camera

Ms. Winfield was the girlfriend of Antonio Sherrod, and the Government Called ms. Winfield to trial; to establish the fact that she knew Dawn Ward drove a gold/tan-colored Dodge Intrepid, and that Petitioner rode in that car with Dawn Ward's boyfriend, (Derrick Crawford). (See Ex A-10 T. Tr. 690-91, which is mr. Bass alerting the Court and defense to the fact why ms Winfield was going to be called to testify, and she was going to identify ms. Ward vehicle off Camera. Ms. Winfield testimony was used to corroborate the Government's theory of the case, and how the shooting happened. Counsel was ineffective for allowing ms Winfield to testify concerning the above matters, and Counsel had prior knowledge that ms Winfield testimony, and identification of the Dodge Intrepid off camera was false. (see Ex A-11) The actual vehicle that was used in the murder of Steven Pendergast. Counsel omission's cannot be ruled to be a "trial strategy", Counsel knew ms. Winfield testimony was prejudicial and uncorroborated by sufficient facts. Instead of Counsel testing the validity of the Government's case; he chose to allow the trial to be infected with misleading statements and false evidence.

(see Ex A-12, T. Tr 751-52)

Direct Examination:

Q    Did you ever know Mr. Crawford to drive a car owned by ms. Ward?

A    Yes.

(9)

Q   What kind of car was that?

A   That would have been a brown Intrepid.

Q   A?

A   Brown/gold/tan Intrepid.

Q   How would you characterize the frequency with which Mr. Crawford drove that tan/brown/gold Intrepid?

A   Like everyday, really.

Q   All right. And are we, again, talking about this same time period after you returned from Mardi Gras?

A   Okay. That I'm not for sure. I'm not for sure, but he driven it.

Q   I'm not following you. Can you repeat that? When do you recall Mr. Crawford driving Ms. Ward's Intrepid?

A   In March until ----

Defense Counsel allowed too many trial errors, and if Counsel omission's isn't clear enough to warrant Habeas relief, than; they'll be no situation where a defendant can obtain relief. Counsel allowed the misleading testimony to go far as allowing her to identify the car off camera being Ms. Ward's vehicle (see Ex A- B-T.Te. 162 164). Ms. Winfield testimony was prejudice at its best. She placed the defendant as a passenger in Ms. Ward's vehicle in March of 2003. In return the Government was able to buttress Ms. Winfield testimony with his own assertion's by saying the shooter who exited the Dodge Intrepid was Antonio Sherrod, with absolutely no proof And that person still haven't been determined to be Antonio Sherrod.

(10)

(D).    Counsel was ineffective for not objecting to the improper use of the photographs. Which should have been excluded under rule 403. The same evidence violated Sherrod Due Process rights to a fair trial.

United States v. Looking Cloud, 419 F.3d. 781, 785 (8th Cir 2005) Rule 403 provides, "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion on the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumalative evidence." Fed. R. Evid. 403 (Emphasis added). "The term 'unfair prejudice,' as to criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180, 117 Sct. 644, 136 LEd 2d. 574 (1974). Rule 403 only bars admission of unfairly prejudicial evidence. Here; the movant contends that the way the Government used the photographs off the surveillance camera was improper. The Movant agrees that it was okay for the Government to use Exhibit 25X, 25Y, 25Z, 25AA, and 25BB, to show the jury how the crime to it steps before taking place. Movant claims that the blurry photos should have been excluded under Rule 403 of the Federal Rules of Evidence. Specifically, Movant claims that the probative value of the photographs was substantially outweighed by their prejudicial impact. Contrary to rule 403 the photo's was admitted. The Government shouldn't have been allowed to use the blury photo's for identification purposes.

(11)

See Exhibit A-14, A-15, A-16, A-17, and A-18, which is pictures of the passenger exiting the Gold Dodge Intrepid. The pictures was not clear. They was blury, and the unfair prejudice the movant suffered is unknown. The Government, after introducing the forbidden evidence; directed the jury to consider the similarities of the defendant to the picture.

T. TR. 1438, 10-12:

This case is about whether the person who got out that car committed a murder was him. And on that question, there is no doubt

T. TR. 1440,:

The picture's which you will have in evidence, or are in evidence and which you will have in the jury room, I won't go through those but they include 25x, 25y, 25z, 25AA, and 25BB. Those are still photos of that particular clip we just saw. you can look for yourselves; that the person who got out of that car with the black hoodie matches the description of the defendant.

Rule 403 bars this type of evidence, because a defendant can be prejudice by its improper use. And the picture's held an important piece of evidence; the crime was able to bee seen off the picture's. for the Government to direct the jury to consider Sherrod's apperance to the blury picture's, was improper and prohibited under 403. Counsel was ineffective for allowing

(12)

the improper use of the photographs without objecting to them being admitted. The picture's should have never went to the jury room for considerations of identification. Which violated rule 403, and sherred Due Process rights to an impartial jury.

(E).  **Counsel Failed To Call Tovorie Gray and John Lee As A Witness For The Defense.**

Counsel was ineffective when he failed to call Tovorie Gray and John Lee as a witness for the defense. Tovorie Gray and John Lee was the 2 people that went to Joe Taylor to sell him the firearm. And counsel had access to reports that could have been used at trial to contradict Joe Taylor testimony concerning the murder weapon. The Cooperation of John W. Lee Led to the arrest of the movant. Up until now, the movant was under the impression that John Lee Sold Joe Taylor the firearm. That theory has been determined to be false. (see Ex A-20) The report is from September 29, 2003. In the synopsis, the report says: "Lee stated that he met with Taylor at the residence, showing Taylor the pistol, and telling him that Gray had hoped that he (Taylor) would purchase the firearm. Lee stated that Taylor and Gray then negotiated a price for the firearm, and indicted that Taylor purchased the firearm from Gray. Lee stated that Gray gave him 100.00 for orranging the sale of the firearm." Had Counsel called Tovorie Gray and John W. Lee, these two individuals would have contradicted Joe Taylor story. Tovorie Gray is the one who sold Mr. Taylor the firearm; In exchange Mr. Gray Paid John Lee 100.00 for arranging the sale. The problem with John Lee and

(13)

Joe Taylor, they both are saying (2) different things. (See Ex A-20), which is a report of investigating officers interviewing Mr. Taylor in regards to the murder weapon. In this report Mr. Taylor fails to acknowledge that Tovorie Gray sold him the firearm. Not only did Taylor fail to acknowledge Tovorie Gray sold him the weapon, but he (Taylor) said: "he told Lee he didn't have any money to give him for the gun. Lee told him he was hurting for cash and Taylor could give him some money now and some later." (See Ex A-20) which is the report from September contradicting Taylor entire statement to the officers on 11-25-03; because, in (Ex-A-20) John Lee tells the investigators that Joe Taylor bought the gun from Gray, and Gray gave him (Lee) 100.00 for setting up the deal, Lee never acknowledge anything about coming back later to get money from Taylor, nor having to bond his (Lee) girlfriend out of Jail. Counsel had several reports and witnesses available to him to contradict Joe Taylor testimony. Counsel failed to subpoena Tovorie Gray and John Lee as witnesses for the defense, who could have contradicted Taylor testimony and credibility, in regards to the 'chain-of-custody' of the firearm.

(F) Counsel Allowed The Perjured Testimony Of Joe Taylor To Go Uncorrected When It Appeared To Be False.

Counsel was not effective for allowing Mr. Taylor to change his testimony on the stand concerning the murder weapon. Mr. Taylor agreed to cooperate and assist the Government in testifying against Sherrod at trial. Mr. Taylor told investigating officers "Sherrod

(14)

took the gun from Larry Gray's apartment. And he admitted to me that he took it, because Gray owed him money." These alligations was used to get a warrant for Sherrod arrest, to find probable cause, and at the Grandjury. Counsel was aware of Mr. Taylor cooperation agreement with the Government. Opening summation had been suggested to the jury that Sherrod stole the firearm from Joe Taylor. (see Ex-A-21) T.Tr.625) The time to alert the Court to Mr. Taylor perjury, was when the Government questioned Mr. Taylor at trial concerning a conversation he (Taylor) supposed to had with Mr. Sherrod. about the murder weapon. In this conversation Sherrod supposed to have admitted to Taylor that he (Sherrod) indeed took the gun.
T. Tr. 1226
(see Ex-A-22); Joe Taylor admitted on direct examination that Sherrod denied taking a weapon from Mr. Gray's apartment, which is contrary to his agreement with the Government. In, U.S. v. Argurs, 427 U.S. 97, 103, 96 Sct 2392, the Supreme Court has "Consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury." This rule seems to also apply whether the prosecution knew of the perjury or merely "should have known" of the perjury. Not only was defense counsel ineffective for allowing the perjury; the Government was obligated to reframe from presenting the false testimony. Mooney v. Holohan, 294 U.S. 103,108 (1935). (see Ex-A-23 T.Tr. 1449-1450); The jury instructions concerning Mr. Taylor was useless since Counsel and Government deprived the

(15).

jury from knowing Mr. Taylor was a liar. Not only did Taylor
testimony go towards his credibility, it also went towards the
prosecution theory concerning the murder weapon. (see Ex - A - $2\frac{3}{4}$,
T. Tr. 1449-1450) The Government felt the need to fill in the
gaps with his own facts. "Antonio Sherrod took that ~~stolen~~ gun
from Mr. Gray's house, and he used it to murder Mr. Prendergast." 
The Government stated " Did Mr. Taylor say that the defendant
said he took it? NO. He said the defendant denied taking it.
Is that the testimony of a liar?" Mr. Boss knew Joe Taylor
had lied, and it was the province of the jury to determine if
he was a credible witness, or whether they believed his story; in
whole, in part, or not at all. They jury was deprived of knowing
Mr. Taylor was a liar, only because Counsel was ineffective. And
the Government failed to correct the false testimony. Which violated
the defendant Due Process rights to an impartial Jury.

(G).   Counsel Violated Petitioner's Due Process rights to effective assistance
of Counsel when he failed to seek the proper assistance from a video
enhancement expert.

As part of discovery in this case, the Government provided Sherrod
with copies of video tapes from the security cameras used in the
Amoco Gas Station on the night of the murder. The video tapes
show a gold Dodge Intrepid pulling up to the far left gas
pump, with a black male wearing blue jeans, wearing a black Jacket
exiting the rear of the passenger-seat. That person was the shooter
of Steven Prendergast, and Counsel knew the video tapes held exculpatory

(16).

evidence. Had Counsel hired a video enhancement expert, to enhance the face of the shooter, the enhancement would of clearly shown Sherrod was not responsible for the death of Mr. Prendergost. In STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984) The Court established a two-pronged approach to the issues of whether Counsel's performance was legally effective or ineffective. In strickland, the held that the defendant (1) "must show that counsel performance was deficient and (2) that the deficient performance deprived the defendant of a fair trial." Had counsel been functioning as Counsel guaranteed by the Sixth-Amendment, he (Counsel) would of seeked the proper assistance to enhance the face of the shooter, and not just merely a still photo. Also, if the enhancement turned out not to be sherrod, the petitioner would have been able to show he was being held in violation of his Due Process rights to Liberty and Freedom. Counsel was obligated to contest any evidence that held exculpatory value. Counsel hired a video expert, but the conclusion of that expert analysis was never brought out in trial. Of course that expert (Mark Weinbeger) broke the (2) video tapes down into (10) single tapes recording each frame of its own. Counsel should have seeked the assistance of an expert to enhance the face of the shooter. The surveillance equipment was working properly, and everything on the tape was visible. failure to prepare a defense clearly constitutes ineffective assistance of counsel. Had it been proven Derrick Crawford was the culprit on camera at the Amoco Gas Station, the case would've been viewed in a different light.

(17).

(H).   Trial Counsel was ineffective when he failed to object to the
       Jury instruction's on Count 2, Which erroneously removed first-
       degree murder.

(I)   Sullivan v. Louisiana, 508 U.S. 275 124 LEd 2d, 182, 113 SCt
      2078 (1993), a criminal defendant is Constitutionally entitled to
      a jury verdict that he is guilty of the crime, and absent
      such a Verdict the conviction must be reversed, "no matter
      how inescapable the findings to support that verdict might be." Id
      at 279, 124 LEd. 182, 113 SCt 2078. A jury verdict that he is
      guilty of the crime means, of course, a verdict that he is guilty
      of each necessary element of that crime. United States v.
      Gaudin, 515 U.S. —, —, 132 LEd 2d. 444, 115 SCt 2310 (1995)
      formally, at least, such a verdict did not exist here: The jury
      was never asked to determined if the defendant carried and
      used a firearm to commit first-degree murder, during and in
      relation to a crime of violence.   Federal crimes are
      solely creatures of statue. Staples v. United States,
      511 U.S. 600, 604 (1994). Therefore, to understand what
      the Government had to prove to get a conviction on
      federal first-degree murder, the analysis must begin
      with a close examination of 1111(a). That is where
      the analysis ends as well, for where the text of the
      statue is clear — and it is in this instance — the statue
      is all that needs to be examined. See Matter of Sinclair,
      870 F.2d 1340, 1344 (7th Cir 1989). Had the jury been asked
      to determine if Sherrod committed first-degree murder, during and
      in relation to a crime of violence, the jury would of had to make

18).

the determination whether " Sherrod committed an unlawful Killing of a human being with malice aforethought." A defendant acts with " malice aforethought" when he acts " with the intent to kill.... or with callous and wanton disregards of the consequences of human life." *United States v. Hillsberg, 812 F.2d 328, 334 (7th Cir. 1987)*. The indictment is all that needs to be examined. (see Ex-A-24). Count 2, charged Sherrod with " Carrying and using a firearm to commit first-Degree murder." Before trial commenced the Court gave the jury a general statement in regards to to Government's burden of proof. (ex-A-25, T.Tr. 597-98). The Court informed the jury that Sherrod was charged with " Carrying and using a firearm during and in relation to a crime of violence, namely first-degree Murder." At the Conclusion of all evidence, the Court reinstructed the jury on the elements the Government had to prove, and "first-Degree murder" was not amongst those elements. (see Ex-A-26, T.Tr. 1422-23). See *In re Winship v. United States, 397 U.S. 358, 364 (1970)* Under *Winship*, Sherrod's Due Process rights to have a jury to deliberate on each and every element of the offense was violated, when the jury instruction's erroneously removed first-degree murder.

(2) The Court failed to give the jury a proper 924(j)(1) Instruction. The jury never rendered a guilty verdict on 924 (j)(1). The verdict is ambiguous.

(19)

The Due Process Clause Places on the Prosecution the burden of persuasion on every element of the crime charged. See Patterson v New York, 432 U.S. 197, 201 (1977). It was the province of the jury to deliberate on every element of the offense intended to punish. Sherrod Due Process rights to a jury trial was violated when the Court never instructed the jury on 924(J)(1). Had the Court instructed the jury on 924(J)(1), the jury would of had to make the determination if Mr. Prendergast death met the requirement of 1111(a). In addition to the jury being instructed on 924(J)(1), the Court would of had to give a general verdict in regards to the elements of 1111(a) from the verdict the jury did reach, its hard to tell whether the defendant was found guilty on 924(c), or 924(J)(1), because the verdict does not clarify or solidify its position. In Yates v. United States, 354, U.S. 298, 77 SCt. 1064, 1. L.Ed. 2d 1356 (1957), the Supreme Court applied the Stromberg rule for the first time in a case involving a general verdict of conviction that may have rested on a nonconstitutional error with respect to one of the charged offenses. The Yates Court stated:

> In these Circumstances we think the proper
> rule to be applied is that which requires
> a verdict to be set aside in cases where
> the verdict is supportable on one ground, but
> not the other, and it is impossible to tell
> which ground the jury selected. Stromberg
> v. California 283 U.S. 359

(20).

The jury was deprived of a proper deliberation, only because they were deliberating under faulty guidance. _Bates v Mc Laughtry_ 934 F 2d 99, 101 (7th Cir), cert Denied 502. U.S. 9115 (1991) "The Due Process Clause requires the State to prove, beyond a reasonable doubt, all the elements of the offense it defines. When the state attempts to evade this obligation, the writ of Habeas Corpus Will issue."

At the minimum Sherrod's conviction on count 2 should be reversed, because the Government was able to circumvent its own indictment, in regards to "first-Degree Murder", and the verdict as a whole is ambiguous. The jury never say whether Sherrod is guilty of 924(c), or 924(j)(1).

(21).

ISSUE: II   APPEALS COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A
REHEARING ENBANC ON THE CARJACKING INSTRUCTION, WHICH
THE APPEAL'S COURT NEVER ADDRESSED THE MERITS OF
APPELLANT'S CLAIM. APPELLANT NOW WISH TO HAVE THE
CLAIM ADDRESSED.

(A)        At the initial stage of Sherrod's Appeal, Counsel raised
five Seperate — independent ISSUE'S. One of the five ISSUE'S was
" THE DISTRICT COURT SHOULD HAVE GIVEN A SUPPLEMENTAL
INSTRUCTION ON CARJACKING, AS THE JURY ITSELF REQUESTED".

Months after oral argument's the Seventh Circuit Court OF
APPEALS rendered an opinion not addressing the merit's of
Sherrod's Claim. Counsel immediately filed for Panel Rehearing
Enbanc in regards to the Court's ruling on the Jurisdictional
argument, and, also, Counsel requested the Rehearing Panel
to address Sherrod's Confrontation argument, which was never
addressed. No where in the Rehearing Enbanc brief, nor in
Counsel Cert' brief, does the "Intent" argument get
brought before En Banc Court, or the Supreme Court.

(B)    HAD APPELLANT'S COUNSEL BEEN FUNCTIONING AS COUNSEL
GUARANTEED BY THE SIXTH AMENDMENT, PETITIONER WOULD OF
BEEN AFFORDED A RULING ON HIS MERITS.

Appeal Counsel deprived Sherrod of the effective assistance
of Counsel thats interpreted in Strickland v. Washington, 466
U.S. 688 (1984). Counsel deprived Sherrod of his most basic
fundamental right to appeal a Court's ruling, when he

(22)

failed to reraise the issue Enbanc or Cert'. Counsel acknowledged in formulating the initial Appeal brief that the District Court committed Plain-error by not giving the jury the guidance they requested in their deliberations. If its proven Appeals Counsel was ineffective Petitioner is requesting to have his claim heard under APPELLATE review.

(C)   THE DISTRICT COURT SHOULD HAVE GIVEN A SUPPLEMENTAL INSTRUCTION ON CARJACKING, AS THE JURY ITSELF REQUESTED.

The District Court Instructed the Jury on Count I as follows:

To sustain the charge of carjacking, as charged in Count One of the indictment, the government must prove the following propositions:

First, the defendant intentionally took a Cadillac Escalade from a person or the presence of another person;

Second, the defendant did so by means of force and violence or intimidation;

Third, the Cadillac Escalade had been transported, shipped, or received in interstate commerce, and

Fourth, the defendant intended to cause death or serious bodily injury.

Two things are missing from this instruction: (1) a statement directing the jury to determine whether there was a temporal nexus between the taking and the intended harm, and (2) an exploration of the minimum specific intent necessary to satify the mens rea component of 2119. The jury hit on this problem during its deliberations, and submitted the following questions to the judge:

1.) Please define intent as it is used in the fourth proposition [of the carjacking instruction]. A) Once a loaded gun is involved in a crime is "intent" assumed? 2.) Please clarify: If the verdict in count one is not guilty then the verdict for count Two must be not guilty? (See A-27). After considering these questions in consultation with counsel, the judge decided that, rather than give the jury a supplemental instruction, he would simply urge the jury to reread the instructions he had already given them — that is, the very instructions that had the jury confused. (see A-28-29). Defense counsel did not object to this proposal, and the next day, despite its confusion, the jury returned a guilty verdict on all counts.

A. Standard of review

Review of this issue is for plain error. See United States v. Sims, 329 F.3d 937, 942-43 (7th Cir. 2003). Unless the error is harmless beyond a reasonable doubt, the judgment must be reversed. Ramsey, 406 F.3d. at 432.

B. The Judge should have defined "intent" as that term is used in the carjacking statue.

When the jury is having difficulty with the instructions it has been given, supplemental instruction is appropriate. Sims, 329 F.3d at 943; United States v. He, 245 F.3d. 954, 958 (7th Cir. 2001). A trial judge does have broad discretion in formulating his response to jury questions, but in all events he must "strive to clear away any difficulties with concrete accuracy." United States v. Zhang, 316 F.3d. 649, 661 (7th Cir. 2002); accord Sims, 328 F.3d at 943; United States v. Otto, 850 F.2d 323, 325-26 (7th Cir. 1988). "In similar situations, when a jury has asked for a definition of a key term

(24)

after deliberations have begun, [this Court has] noted that 'the [district] court would have failed to treat [the] issue fairly or adequately if it had not issued a supplemental instruction.'" He, 245 F.3d. at 958-59 (quoting United States v. Alexander, 163 F.3d. 426, 428-29 (7th Cir, 1998) (emphasis added.).

United States v. Baldwin, 514 F.2d 1301 (D.C. Cir. 1975) presents an analogous situation where the jury made explicit its need for supplemental instruction on a key term. There, the defendant had been charged with felony murder, he was accused of killing a security guard and then committing robbery. During the course of its deliberations the jury asked: "If it is determined that a robbery was in fact committed, does this necessary imply previous intent to commit a robbery?" Id. at 1308. Despite the jury's cogent request for clarification, the court refused to do anything more than reread the felony-murder statute and the standard instruction.

The D.C. Circuit reversed. The problem was that the district judge's response may have left the jury with a mistaken impression that the mere coincidence of a killing accompanied by a subsequent robbery was sufficient to convict on felony murder. The appellate court acknowledged that the standard instruction would normally suffice, but in this case, because of the jury's obvious confusion, the jury "required guidance by a lucid statement of the relevant legal criteria." Id. at 1309 (quoting Bollenbach v. United States, 326 U.S. 607, 612-13 (1946)). "Particularly where a difficult legal issue such as intent, which is not precisely defined by the statute, is the subject of the jury's inquiry, the trial court should carefully inform the jury of the law, and not allow the troubled jury to rely on a layman's interpretation of a superficially simple but actually complex statute." Id. Failure to provide clarification on such a critical issue was not

(25)

harmless error, for "the jury convicted on the basis of an instruction which did not provide them with the legal information they themselves indicated that they needed." *Id.*

As in *Bolden*, the jury here was confused on the same key term — intent — and so reasonably requested additional guidance from the court. It appears the jury was deliberating under a misimpression. Subpart (A) to the jury's first question suggests the jury was focused on the general intent associated with possession of a loaded firearm, rather than on specific intent required to prove carjacking. The jury's uncertainty was hardly inconsequential.

Section 2119 — which the trial court did not read to the jury — provides: "Whoever, with intent to cause death or serious bodily harm[,] takes a motor vehicle ..." commits the offense of carjacking. (emphasis added). The Supreme Court in *Holloway v. United States*, in interpreting this clause, explained:

> The statue's mens rea component ... modifies the act of "taking" the motor vehicle ... It directs the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car "by force and violence or by intimidation."

526 U.S. 1, 8 (1999). The *Holloway* court went on to hold that proof of "conditional" intent is sufficient to satisfy the mens rea component. [1] *Id.* at 7-8. In sum, then "[t]he intent requirement of 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car." *Id.* at 12

---

[1]
"If you don't give me the car, then I will kill you," is an expression of conditional intent.

(26)

The carjacking instruction in this case lacked any similar expression. There was nothing in the instruction (unlike the statute) to "direct[] the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car...." Id. at 8. This omission left a critical element of the principal charge ambiguous at best.

The District Court could have quite easily cured this problem by modifying the fourth proposition to read: " the defendant intended to cause death or serious bodily injury at the precise moment the defendant demanded or took control over the Escolade." Or, it could have borrowed from various pattern instructions that were available at the time, all of which contained some expression of 2119's nexus element, and modified the fourth proposition accordingly. [2] The Court could have have assisted the jury by explaining the concept of Conditional Intent, for example:

> The intent element requires the Government at a minimum
> prove beyond a reasonable doubt that the defendant would
> have attempted to seriously harm or kill Mr. Pendergast if
> necessary to complete the taking of the Escolade.

The Seventh Circuit had already approved of a similar instruction, see United States v. Jones, 188 F.3d 773, 776 (7th Cir. 1999), as had the Supreme Court, see Holloway, 526 U.S. at 4. Alternatively, the court could have combined these concepts, and restated the fourth proposition this way:

---
[2]

See, e.g., 2B Federal Practice & Instructions: Criminal 58.03 (5th ed. 2000)("while..... [taking] the car or other motor vehicle, Defendant ____ intended to cause the death of ____] ..." (bold emphasis added))), Federal Jury Practice & Instructions: Pattern & Jury Instructions — Criminal (for the 8th Cir.) 6.18. 2119 A(2003)("at or during the time the defendant[took] (describe motor vehicle)(he)... intended to cause death or serious bodily injury." (emphasis added); Federal Jury Practice & Instructions: Pattern & Jury Instructions — Criminal (for the 11th Cir.)73(2003) That the defendant intended to cause death or serious bodily harm when the Defendant took the motor vehicle...." (Emphasis added))).

Fourth, the defendant intended to cause death or serious bodily injury at the precise moment the defendant demanded or took control over the Escalade if Mr. Prendergast resisted the defendant's efforts to obtain the Escalade.

The point is not that the district judge had to give these particular supplemental instructions. It is, rather, that the judge had any number of options, and could have defined "intent" – as the jury specifically requested he do – with a modicum of effort. Instead, despite the clarity of law and the tools available to him at the time, including three different pattern instructions, the judge refused to give the jury any further direction, indeed, his answer to the jury's questions was essentially non-responsive.

The precise effect this had on the jury's deliberations cannot be known. Belden teaches, however, that reversal is warranted when the judge's response to questions by the jury (or lack thereof) "could well have left the jury with the incorrect impression," 514 F.2d. at 1308, particularly on a term as critical as intent. Here, the court's refusal to provide supplemental instruction may well indeed have left the jury with the misimpression that its hunch was correct, that is, that it could "assume" the requisite intent from mere involvement of a loaded gun. The judge certainly gave the jury no reason to believe otherwise.

Of course, intent could not have been assumed. "In specific intent crimes, the intent element must be separately and directly proven by the government." United States v. Cruttadauro, 342 U.S. 246, 274-76 (1952) where specific intent is an element of the charge, the finding of intent is a matter for the jury, and the court may not remove the issue from the trier of fact by instructing the jury that the law draws a presumption of intent from a single fact). "Separate ΣΙ and direct ΣΙ" proof is a far cry from an assumption. Cf. United States v. Arnold, 126 F.3d 82, 87 (2d Cir. 1997) (approving of a jury instruction that said,

(28)

...in part, "[E]vidence that the defendant intended to use a gun to frighten the victims is not sufficient in and of itself to prove one intent to kill or cause serious bodily harm").

Supplemental instructions along the lines suggested would have at a minimum clarified the definition of intent and, in turn, hopefully dispelled the notion that the mere involvement of a loaded gun necessarily sufficed to prove Carjacking. With the necessary clarification, the jury may have come to the conclusion that, while Sherrod pointed a loaded gun at PenSergast to effect the taking, thus satisfying the element of intimidation, that same evidence (without more) was insufficient to satisfy the separate and distinct element of intent. Cf. Morissette, 342 U.S. at 276 (discussing what the jury "might have concluded" had it been properly instructed on intent). But, laboring as apparently the jury was under the misapprehension that the involvement of a loaded gun automatically satisfied both elements, the jury may have felt it better to err on the side of caution and convict.

This was extremely prejudicial. The jury's second question to the judge suggests quite clearly that it was at least contemplating acquitting Sherrod on the Carjacking charge ( Count I), perhaps because it reasonably doubted the intent element had been proved. (Else, why would it have been concerned about the effect an acquittal would have on Count II ?) Nonetheless, although the jury may have harbored such reservations, it went ahead and convicted Sherrod anyway. That jurors may have felt forced into finding Sherrod guilty oñ the carjacking count because of lingering uncertainty— uncertainty which they themselves identified— calls into question the very fairness, integrity, and reputation of Judicial proceedings.

"A conviction ought not to rest on an equivocal direction to the jury on a basic issue." Bollenbach, 326 U.S. at 613. Telling the jurors to reread the original instructions did not clarify the equivocal direction they had been given on the basic issue of intent. The only way the Judge could have cleared away that confusion

with "concrete accuracy," id, and treated the issue "fairly and adequately," He, 245 F.3d. at 958, was by giving the Jury supplemental instructions. A new trial is therefore warranted.

ISSUE III   Counsel failed to object to Shay Guttendorf's in-court identification which violated Sherrod's 6th Amendment right to effective assistance of Counsel at trial, which should have been excluded under the Wade-Gilbert exclusionary rule.

The issue here is whether Ms. Guttendorf's in-court identification of the accused at trial violated the 6th Amendment right to effective assistance of Counsel. The in-court identification should have been excluded from evidence because the witness was afforded a private (photo-spread) lineup of the defendant in the absence of Counsel. The principle of Powell v. Alabama — and succeeding cases requires that the court scrutinize any pretrial confrontation of the accused to determine whether the presence of his Counsel is necessary to preserve the defendant's right to a fair as affected by his right to meaningfully to cross-examine the witness against him and to have the effective assistance of counsel at the trial. (Failure to object to the admission of Ms Guttendorf's in-court identification deprived Sherrod of the effective assistance of Counsel. Which is Contrary to the Sixth Amendment.) (See Ex A-30) which is a report given to Sgt Lowman of the Kankakee Police Department on 3-21-03 by Shay Guttendorf. (Shay is the witness who called 911). Her March description was so vague, officers never bothered to show her a lineup. " The guy wearing the black hoodie looked like he was about as tall as the guy that gotten shot; maybe about 5'10", thin build."

{🐷} {31}

Nearly 9 months after the crime sherrod was arrested, and charged by criminal complaint on December 8, 2003 in Federal Court. Sherrod was appointed Counsel on December 8, 2003. Eight days later Lieutenant Kane secretly felt the need to conduct a private-photospread — lineup of the defendant, in the absence of his Counsel. At the private photo-spread Ms. Guttendorf identified Sherrod as the culprit who she saw doing the crime. During this private photo-spread Ms. Guttendorf memory drastically changed to a clearer image of what she witnessed 9 months earlier. Some way; some how, she was able to come up with details like:

I saw the man's face who did the shooting. I also saw his hands and I don't believe that he didn't have any gloves on his hands. I say that because his hands looked too much like skin tone and not gloves. I can remember that even with his hood up, I could see his face enough to see his nose, cheek bone area, eyes and mouth area. I can remember that his hands appeared to be the same tone as his face, that's why I don't believe that he had gloves on his hands. I can also remember he was very thin. When he was turned sideways, I could see that his clothes hung straight down like he was real thin. I could tell his legs were thin too.

T. TR 680, Ms. Guttendorf identified sherrod in open court as the person she saw do the murder.
T. TR. 712:

(38)

Q   Ms. Guttendorf, you identified the photograph I showed you of the series of photographs on December 16th of 2003, and you've identified the defendant here in court this morning as being the person you saw at the gas pump.

How certain are you that the person seated here in the courtroom is the person you saw approach the driver on March 16th?

A   100 percent certain.

In United States v. Wade 388 U.S. 218, 87 SCt 1926, there the defendant was arrested on April 2, and counsel was appointed to represent him on April 26. Fifteen days after counsel was appointed an F.B.I. agent, without notice to Wade's lawyer, arranged to have two bank employee's observe a lineup of Wade. At trial the two employee's, when asked on direct examination if the robber was in the courtroom, pointed to Wade. The prior lineup identification was then elicited from both employee's on cross examination. (The court stated, " In this case it is urged that the assistance of counsel at the lineup was indispensable to protect Wade's most basic right as a criminal defendant—his right to a fair trial at which the witness against him might be meaningfully cross examined," Davis v Alaska 415 U.S. 308 (1974) Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested. The Court in Wade created a Per se rule excluding incourt identification that was part of an illegal lineup.

(33)

Justice White whom Justice Harlan and Justice Stewart join, dissenting in part and concurring in part:

The Court has again propounded a broad Constitutional rule barring the use of a wide spectrum of relevant and probative evidence, solely because a step in its ascertainment of discovery occurs outside the presence of defense Counsel. [The] court's opinion is far-reaching. It proceeds first by creating a new Per se rule of Constitutional law: a criminal suspect cannot be subjected to a pretrial identification process in the absence of his counsel without violating the Sixth Amendment. If he is, the state may not buttress a later courtroom identification of the witness by any reference to the previous identification. Futhermore, the court-room identification is not admissible at all unless the state can establish by clear and convincing proof that the testimony is not the fruit of an earlier identification made in the absence of defendant's Counsel — admittedly a heavy burden for the State and probably an impossible one. To all intents and purposes, Courtroom identifications are barred if pretrial identification have occured without Counsel being present."

Therefore, for LT Kane to conduct a private — photo spread — without Sherrod's Counsel being present violated the per se rule the Court laid down in United States v. Wade 388 U.S. 218, 87 SCt 1926. In which violated Sherrod 6th Amendment right to effective assistance of counsel, because there could have been words uttered by the Agent or the witness which could

(34)

have been used on cross examination at trial. This same tainted private — incourt — identification violated Sherrod 5th Amendment right to a fair trial, and 6th Amendment right to effective assistance of counsel.

United States v Ash, 413 U.S. 300, 93 SCt 2568, presents a similar situation like whats at hand in Sherrod's case. Shortly before trial, almost 3 years after the crime, and long after Ash had been incarcerated and appointed counsel, the Government conducted a photographic display without notifying Ash's lawyer. There, the prosecutor showed 5 color photographs to four witnesses who peviously had tentatively identified the photo, but one was unable to make any selection. The U.S. Court of Appeals for D.C. Circuit ruled that defendant's right to counsel had been violated when his attorney was not afforded the opportunity to be present at the photographic display. In Powell v. Alabama, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary Judicial Proceedings have been initated aganist him.

The rule thats laid down in U.S. v. Wade, applies to any line up, to any other techniques employed to produce an identification and a fortiori to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place, and whether before or after an indictment or information. It matters not how well the witness knows the suspect, whether the witness is the suspects mother, brother, or long associate, and no matter

(35)

how long or well the witness observed the perpetrator at the scene of the crime. The Kidnap victim who has lived for days with his abductor is in the category as the witness who has had only a fleeting glimpse of the criminal. Neither may identify the suspect without defendant's Counsel being present. The same strictures apply regardless of the number of witnesses who positively identify the defendant and regardless of the corroborative evidence showing that it was the defendant who had committed the crime. "The Court apparently believes that improper Police procedures are so widespread that a broad prophylatic rule must be laid down, requiring the presence of Counsel at all Pretrial identification in order to detect recurring instances of police misconduct." For L.T. Kane to take it upon himself to conduct his own photographic line up, violated the rule thats laid down in Ash.

(1) Counsel was ineffective for failing to file a motion excluding Shay Guttendorf identification, because it violated Sherrod's 6th Amendment right to effective assistance of counsel, and his 6th Amendment Due Process right to cross-examine and test the validity of Ms. Guttendorf's photographic line-up.

(2). Counsel was also ineffective for not cross examining Ms. Guttendorf with the 911 tape, which was available to the defense.