E-FILED
Monday, 25 August, 2008  02:46:42 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

ANTONIO SHERROD,

    Petitioner

vs.

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 08 - 2013

FILED

AUG 2 5 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Sherrod's response brief to the
Government's reply motion under 28 U.S.C. 2255 and
motion for discovery.

Sherrod contends that his 2255 sets forth valid claims of ineffective assistance of counsel. The claims have merit and should be viewed in light of an evidentiary hearing. Sherrod have put forth a detailed affidavit to assist the court in judging counsel's ineffective claims. It would be the sound discretion of the court to remand the case for an evidentiary hearing.

However, in order to merit on evidentiary hearing, a motion under 2255 must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions. Barry v. U.S., 528 F.2d. 1094, 1101 (7th Cir. 1976).

In the case at bar, Sherrod has put forth every forseeable claim of counsel's unprofessional errors, which may have come from a lack of "trial preperation's" or "investigation". Nevertheless, had counsel used the available tools to defend the petitioner its a good possibility the outcome would have been different; (1) Counsel failed to object to the false theory in regards to the car used in the murder, which led to perjured testimony being used in the petitioner's trial; (2) had counsel enhanced the face of the shooter as he exited the Dodge Intrepid, and it turned out to not be Sherrod, the proceedings would have been different; (3) Counsel failed to call Naomi Jordan and Donald Sherrod as witnesses for the defense to introduce the recorded conversation of Derrick Crawford, where he admitted to being the person who exited the Dodge

Intrepid. During this conversation on the phone, the jury would've heard the evidence of Joe Taylor being present at the time of the crime, which would have excluded the testimony of Larry Gray because it would've been a proven fact Sherrod didn't steal the firearm. The evidence would of shown beyond a reasonable doubt Larry Gray and Joe Taylor conspired to say "Sherrod stole the gun." (View Naomi Jordan Affidavit).

For every witness the petitioner doesn't have on affidavit from its only because the record lends some support in regards to the allegations.

(I) Question Presented:  Did Counsel VIOLATE SHERROD'S SIXTH
AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE BY NOT OBJECTING TO
THE GOVERNMENT'S FALSE THEORY OF THE CASE IN REGARDS TO THE
CAR USED IN THE MURDER?
CLAIMS 1A, 1B, 1C

The government contends that the petitioner presents no evidence
to establish that his trial counsel was aware or should have been
aware at the time of trial of any questions as to Ward's owner-
ship of a gold or tan Intrepid at the time of the murder.
The government's theory was as follows: T.TR. 1435

Well, on March 16, 2003, the defendant lived in
Kankakee, Illinois, just a few blocks away from the Amoco gas
station. He was a friend of Derrick Crawford who dated Dawn
Ward. She drove a tan or gold-colored Dodge Intrepid. He
always rode in the passenger seat. That Dodge Intrepid was at
that Amoco Station. It cased the Cadillac Escalade.

The passenger, the defendant, got out of that car,
put on a black hoodie, concealed his face, walked up to the front
of the Amoco gas station, didn't go inside, stayed outside, got
back into that Intrepid which then circled that Cadillac Escalade
a second time, and drove out of the parking lot as the police
squad car pulled in.

The person who got out of that Dodge Intrepid
is Antonio Sherrod. There is no reasonable doubt about that.
The petitioner asserts that Counsel had all of the available
tools to assist him in representing the case to the best of
his professional ability. Prior to trial, Counsel had knowledge
that the Dodge Intrepid used in the murder belonged to

(1)

Kristina Kirchner. Counsel was advised by the petitioner where to locate Ms. Kirchner. Counsel, Steven J. Beckett sent his private investigator Richard Noble to speak with Ms. Kirchner. During the meeting, Ms. Kirchner informed Mr. Noble that she had rented the car from Enterprise. After Counsel learned that the government's theory was false, he advised the petitioner that he would uterlize Ms. Kirchner information to rebut the prosecutor theory of the case. "A petitioner asserting an ineffective assistance of counsel claim under Strickland must show that counsel's performance was deficient and that the deficient performance (452 f.3d 662) prejudice the defense." Its no question as to whether Counsel's performance prejudiced the defense: had Counsel been acting as counsel gauranteed by the Sixth Amendment, the Government's entire theory would have been objected to, starting with the opening summation. The petitioner Due Process Rights to a fair trial was violated when Counsel allowed the Government to present a fraud theory. Darden v. Wainwright, 477 U.S. 168 (1968). Trial Counsel failure to lodge an objection prejudiced Petitioner and infected his entire trial, before it even got started with Constitutional errors. Strickland, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id at 88. Strickland requires a reviewing court to " determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690; Kimmelman v. Morrison, 477 U.S. 365, 386, 106 S.Ct 2574, 91 L.Ed. 2d 305 (1985). In so doing, " it will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the

(2)

'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Kimmelman*, 477 U.S. at 386. To establish prejudice, the petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694; *Wiggins*, 539 U.S. at 534.

## Identified Acts And Omissions:

(1) Counsel failed to call Kristina Kirchner as a witness for the defense to establish her ownership of the Dodge Intrepid.

(2) Counsel allowed the Government to violate Sherrod's Due Process Rights to a fair trial, when he didn't object to a theory in which he knew was false beyond a reasonable doubt.

(3) Counsel failed to correct Lieutenant Kane perjured testimony concerning the Dodge Intrepid, in which, violated Sherrod's jury trial Rights.

(4) Counsel allowed the misleading testimony of LaKesia Winfield concerning Dawn Ward's Intrepid.

(5) Counsel failed to alert the Court that Joe Taylor comitted perjury at trial, in regards to the murder weapon.

(6) Counsel failed to enhance the face of the Shooter who exited the Dodge Intrepid wearing the black CartHart Jacket.

Counsel's Cumulative Error's violated Sherrod's 6th Amendment rights and 5th Amendment Right to a fair trial. *Crisp v. Duckworth*, 743 f. 2d 580 (7th Cir. 1984). In the case at bar, Petitioner asserts that his trial attorney committed multiples acts and omissions which taken as a whole amounted to ineffective assistance. In *Crisp*, the Court found that it must examine each

(3)

error individually and then must consider their cumulative effect in light of the totality of circumstances. Strickland, 104 S. Ct. 15 2069; United States v. Brown, 739 F.2d. 1136 at. 1145 (7th Cir. 1984). On one hand, this means that an attorney individual error may not, looking at the trial as a whole, cast doubt on the reliability of the result, and therefore would not merit a reversal. On the other hand, even if the individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the Strickland, Test. See, United States v. Merritt, 528 F.2d. 650, 651 (7th Cir. 1976).

In support of its theory that the Intrepid used in the murder belonged to Dawn Ward, Lieutenant Kane testified to the jury that the Intrepid on video belonged to Dawn Ward. T.Tr. 1251-54. The jury was able to compare the Intrepid from the salvage yard to the vehicle off video. T.Tr. 1253. Counsel objected to the publication, still his objection was irrelevant since he couldn've prohibited the government use of any prejudicial evidence concerning Sherrod and Ward's Intrepid. The knowing use of perjured testimony against a criminal defendant is unconstitutional. Napue v. Illinois., 360 U.S. 264, 269-70, 79 S.Ct. 1173, 3 L.Ed. 2d. 1217 (1959). In order to obtain habeas relief based on perjured testimony used by the prosecutor at trial, a petitioner must show: "(1) that the prosecutor indeed presented perjured testimony, (2) that the prosecutor knew or should have known of the perjury, and (3) that there is some likelihood that the false testimony impacted the jury's verdict." Harding v. Walls, 300 F.3d 824, 828 (7th Cir. 2002). Additionally, mere inconsistencies in the testimony of a government witness fall short of establishing that the government knowingly used false

(4)

testimony and "the alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence."' Tayborn v. Scott, 251 F.3d. 1125, 1131 (7th Cir. 2001). Mills v. Scully, 653 F. Supp. 885 (S.D.N.Y. 1987). Defense counsel failure to move to correct testimony, which he knew was false or misleading, may constitute ineffective assistance of counsel. Trial Counsel should've requested a mistrial on the basic of Lakesia Winfield misleading testimony. Counsel deprived Sherrod of a fair trial. Clark v. Duckworth, 906 F. 2d. 1174 (7th Cir. 1990), Ms. Winfield identified the Intrepid off camera as belonging to Dawn Ward. The jury was hoodwinked by Counsel and the prosecution. Even in drafting its reply brief, the Government tries to evade its obligation to correct the false testimony's which compounded Sherrod's trial with cumulative errors. Page 19 of the Gov. Reply states:

"... he presents no evidence from Ward to question whether she also owned a gold or tan Dodge Intrepid in March 2003. At best, the petitioner's claim raises the possibility that Ward owned two Intrepids, a gold or tan Intrepid that was registered to her prior to the murder and located in the salvage yard, and a second brown Intrepid that she purchased in June 2003." (View Petitioner's affidavit). Now, the Government in its reply brief tries to convice the court Ward owned two Dodge Intrepids, with absolutely no proof to support the allegation. It would've been common-sense for the Government to call Ms. Ward as a witness to authenticate their evidence in regards to her vehicle. Had counsel subjected the prosecution's case to a meaningful testing, three things would have happened: (1) the opening and closing to the government's summation in

(5)

regards to Sherrod and Derrick Crawford being in Ms. ward's Intrepid at the gas station would have been excluded from the trial; (2) Lieutenant Kane and Lakesia Winfield testimony would have been excluded from trial, because Kane testimony was false, and Winfield testimony was misleading, (3) the jury wouldn't of been allowed to compare the actual pictures of Ward's Intrepid, In which she purchased 6-19-03, to the Intrepid used in the murder 3-16-03. All of this prejudicial evidence would've been objected to. Osborn v. Shillinger, 861 F.2d 612 (10th Cir. 1988). Defense counsel's performance was not only ineffective, but counsel abandoned the required duty of loyalty to his client; Counsel did not simply make poor strategic or tactical choices; he acted with reckless disregard for his clients best interest, and apparently with the intention to weaken his client's case.

(II) Trial Counsel violated Sherrod's 5th Amendment Right to A Fair Trial By Not Enhancing The Video Tapes, And 6Th Amendment Right To Effective Assistance Of Counsel.

Trial Counsel's failure to subject the prosecution's case to a meaningful adversary testing may constitute a denial of due process and establish a per se violation of defendant's right to effective assistance of counsel. See U.S. v. Cronic, 466 U.S. 648 (1984).

During the preliminary faze of the criminal proceedings, Counsel was concerned about requesting funds from the Court for enhancement purposes. Counsel for Sherrod stated the following: T. R 54. "There's videotapes that are involved in this case that are very important to the defense as well,

and one of the things that we need to do is request fund-ing from the court to enhance these videotapes and turn some of them into still photographs. And we've located some-one in Ohio to do that." Under the principles of Strickland, counsel was required to do a prompt investigation that would of produced material facts and prepared him for trial. With-out the enhancement of the face of the shooter who emerged from the Dodge Intrepid wearing the (Black CartHart Jacket), the jury was deprived of knowledge, and direct evidence that could've proven beyond a reasonable doubt Sherrod wasn't responsible for the murder of Steven Prendergast. The jury was left to consider in light of the other evidence against the petitioner, he was responsible for the murder. Never-theless, had counsel enhanced the tape it would've had a substantial impact on their deliberations.

Prosecution's theory: This case is about whether the person who got out that car committed a murder was him. And on that question, there is no doubt.

Prosecution's theory: T.R. 1440. You can look for yourselves; the person who got out that car with the black hoodie matches the description of the defendant.

Now, the Government in its reply brief veses every tactic it can to avoid Sherrod's claims that the video evidence was important at his trial. Page 22 of the Government's reply is as follows: "more importantly, the video evidence presented by the Government did not implicate the petitioner." The Government's arguments is contridictory amongst itself. In another part of the Government's brief, it states:

P-18. "At trial, the Government's evidence, including the video evidence, established that the person who shot Prendergast had emerged from a tan or gold Dodge Intrepid that had arrived at the gas station." In another contridictory part of the brief the Government states: P-4. "The petitioner, who was a back seat passenger, got out of the car, approached the front of the store and then returned to the car, which had pulled up to the store to meet him. After the petitioner (who was wearing a black Cartthart Jacket) got back into the car."

This is the same speculative evidence that was placed before the jury. The black Carthort Jacket was a key factor at trial, along with, who the person was that exited the car wearing the black Jacket. Eyewitness in the case identified the shooter to be wearing either a black hood, or a black Jacket with blue jeans. Began Booker went indept with her identification. She identified the brand of the coat to be a Carthart Jacket. (See T.Tr. 1117) Also, the black Jacket was located with the murder weapon.

The Government even argued at the court of Appeals for the Seventh Circuit, that Sherrod was the passenger who exited the car wearing the black Cartthart Jacket (see page 7 of the Government's Appeal brief.). So, for the Government to argue the tapes did not implicate Sherrod will seem as if its trying to secure a wrongful conviction, when its evidence that can be subjected to testing in which can prove who actually killed Mr. Prendergast. The Government tries to convince the court to not look at the importance of the video tapes.

Trial Counsel theory was: Derrick Crawford was responsible for the murder of Steven Prendergast. T.Tr. 1471. Counsel went even further to argue that, the black coat, which was located with the murder weapon belonged to Derrick Crawford. T.Tr. 1471. Counsel did no investigation to prove Derrick Crawford's involvement, like: comparing DNA or enhancing the face of the shooter who exited the car wearing the black CartHart Jacket. Had counsel enhanced the tape he would of had direct evidence to Support his theory beyond a reasonable doubt. All of counsel's error's impacted Sherrod's trial and contributed to the verdict. See Arrowood v. Clusen, 732 F.2d. 1364 (7th Cir 1984) Trial counsel's unprofessional errors and omissions must be considered in light of the totality of the circumstance. In other words, the prejudicial effect must be considered together. Goodwin v. Balkcom, 684. F.2d. 794 (11th Cir. 1982). The totality of trial counsel's unprofessional error's and omissions constituted ineffective assistance of counsel. Harris By and Through Ramseyer v. Wood, 64 F.3d. 1432 (9th Cir. 1995) Trial counsel's failure to investigate and prepare for trial amounted to ineffective assistance. Tuner v. Duncan, 158 F.3d. 449 (9th Cir. 1998) Trial counsel's failure to investigate and to adequately conduct a pretrial preperation was not a strategic decision and required a remand for an evidentiary hearing to determine whether a pretrial investigation would have produced a conviction of a lesser degree of homocide.

( 9 )

## III

Question Presented: Was APPELLATE COUNSEL INEFFECTIVE FOR NOT RAISING THE SUPPLEMENTAL INSTRUCTION ISSUE IN HIS EN BANC BRIEF OR CERT.? WAS THE "INTENT" ELEMENT PROPERLY DEFINED TO THE JURY?

    The Central issue here is whether the district court instructed the jury properly. In order for a party to contest a district court's failure to give a proposed instruction, the instruction must state the law accurately. Northbrook Excess, 924 F.2d at 638. Moreover, an error in giving (or refusing to give) a particular instruction will not be considered reversible error unless, considering all the instructions, the evidence and the arguments that the jury heard, it appears that the jury was mislead or did not have a sufficient understanding of the issues and its duty to determine them.

    Simmons, Inc. v. Pinkerton's, Inc, 762 F.2d 591, 597 (7th Cir. 1985) (citations omitted). The instructions must be "evaluated as a whole, in a common sense manner, avoiding fastidiousness, inquiring whether the correct message was conveyed to the jury reasonably well. Reversal is inappropiate unless the jury's understanding of the issues was seriously affected to the prejudice of the complaining party." Wilk v. American Medical Association, 719 F.2d 207, 218-19 (7th Cir. 1983), cert, denied, 467 U.S. 1210, 81 L.Ed. 2d. 355, 104 S.Ct. 2398, 104 S.Ct. 2399 (1984). Nevertheless, when jury instructions, taken as a whole, give the jury a misleading impression or inadequate understanding of the law, a new trial is warranted." Carvel Corp. v. Diversified Management Group, 930 F.2d. 228, 232 (2d. Cir. 1991).

(10)

Appellate Counsel raised the "Intent" supplemental instruction issue, but the Court of appeals for the Seventh Circuit never addressed the merits of the claim. In drafting the Rehearing En banc brief, counsel failed to request that the Court address the merits. Counsel became ineffective when he didn't Recall THE MANdate on the 'Intent' Instruction. Counsel denied Sherrod his right to appeal when he didn't bring the issue Certiorari. The Due process Clause of the Fourteenth Amendment guarantees the right to effective assistance of counsel on first appeal. Evitts v. Lucey, 469 U.S. 387, 396-99 (1985). The Government asserts that Sherrod is barred from raising the Supplemental instruction issue because the issue could've been raised on direct appeal. In the Government's brief to the Appellat Court, AUSA Timothy A. Bass argued to the Court of Appeals that Sherrod waived his right to challenge the issue on appeal. (view Gov' brief on Appellate Issues) (Ex-1). Therefore, it clearly shows that counsel for the Petitioner on Direct appeal did raise the claim, but abandoned his obligation to the defendant when he failed to file for Rehearing En banc, Cert', or to Recall The Mandate for the Court to address the merits. Had the Court of Appeals addressed the merits, its a great possibility the conviction would have been overturned, due to the incorrect application of law that had the jury confused. Even the jury requested to be reinstructed on the element of the statue under which the defendant was charged. The Court was mandated to give the jury the guidance they needed to assist them in their deliberations. When the court failed to give the Jury the guidance they needed to assist them in deliberating, Sherrod's Due Process rights to

(11)

an impartial Jury of his peers was violated under the 5th Amendment. A new trial is therefore warranted.

**III** Question Presented: Was Counsel Ineffective For Allowing the Government To Present Joe Taylor Perjured Testimony?

The issue here is whether Joe Taylor perjured himself in regards to the murder weapon. Nevertheless, the Government contends that Joe Taylor testimony was irrelevant, and the testimony from Larry Gray was the most damaging evidence. Somehow, the government believes that Taylor trial testimony helped Sherrod. Perjury and inconsistency is two different things: (1) perjury has an intent element; (2) inconsistency can come from a lack of memory. However, the Government fails to realize Taylor statements was used to get a warrant for Sherrod. (view the Government's affidavit). Also, it was relied upon at the probable cause hearing: T.R.10. The Court:

"All of the elements of the charge have been dealt with here. There are no missing elements. And as far as the connection of the defendant to the events, despite the fact no one has identified him from the videotape and his prints were not found on the weapon, certainly his prints in the vehicle connect him to the vehicle, and the confidential source's information connects him to the weapon that has been established as the weapon that caused the death of Mr. Prendergast. The Court will enter a finding of probable cause. I agree it's not overwhelming evidence,"

Sherrod has a due process right to even a fair hearing. The Judge who presided over the probable cause hearing made his ruling on the principle of relying on the Confidential informant's information, which was Joe Taylor. Larry Gray statement was not important, because on December 8, 2003, at night, he gave his detailed report to detectives. By then, the Government had a warrant signed and sealed based on Taylor's admission that "Sherrod admitted to me that he took the gun because Gray owed him money."

At the grand jury Lieutenant Kane was asked questions by AUSA Timothy Bass, and Kane testified at the grand jury to the statement Joe Taylor made, which was the exact statement used to get a warrant, also; it was relied upon at the probable cause hearing. Grand Jury T.R. 14. Kane confirmed to the grand jury that Sherrod admitted to taylor that he took the firearm.

Sherrod contention is that he was denied due process of law because of the alleged perjury of a Government's witness.

A habeas petitioner must show that the prosecutor or other government officers knew that the testimony in question was false in order to prevail. Hysler v. Florida, 315 U.S. 411, 86 L.Ed. 932, 62 S.Ct. 688 (1942). It is only when public officers connive or knowingly acquiesce in the use of perjured evidence that their misconduct denies a defendant due process of law. Napue v. Illinois, 360 U.S. 264, 3 L.Ed. 2d 1217, 79 S.Ct. 1173 (1959). At trial the government, AUSA Timothy Bass, Lieutenant Kane, and Counsel for the defendant knew Taylor had committed perjury. Taylor prior statements

was used in several important preliminary stages of the proceedings. In opening summation by the Government the jury was under the impression that they would indeed hear from Taylor in regards to the murder weapon.

In Napue the principal witness for the prosecution falsely testified that he had been promised no consideration for his testimony. The Court held that the Knowing use of false testimony to obtain a conviction violates due process regardless of whether the prosecution solicited the false testimony or merely allowed it to go uncorrected when it appeared. The Supreme Court in Giglio v. United States, 405 U.S. 150, 31 L.Ed. 2d. 104, 92 S.Ct. 763 (1972), expanded Napue and held that a defendant is entitled to a new trial if he can establish that the state intentionally or inadvertently failed to correct materially false testimony that was relevant to the credibility of a government's witness. See also Ross v. Heyne, 483 F. Supp. 798 (N.D. Ind. 1980), aff'd in part, rev'd in part, 638 F. 2d. 979 (7th Cir. 1980).

The clear import of the above cited cases is that a due process violation can only be found when the state is a knowing and willing participant in the alleged perjury, or the state knowingly or inadvertently allows perjured testimony to go uncorrected. Here, in the case at bar, the government allowed Taylor to commit perjury. Also, had counsel introduced the phone conversation's of Derrick Crawford and Sherroo on the 3-way at Paxton County Jail, its a proven fact Larry Gray entire testimony would have been discredited. The phone conversation would've proven beyond a reasonable Sherrod didn't steal the firearm. (View Naomi Jordan Affidavit).

## Rule 6 Discovery Request / VIDEO TAPES

One of the principal items involved in the case were video tapes from the gas station where the crime took place. The tapes were very essential to the Government's case. The Shooter emerged from a gold Dodge Intrepid wearing a (Black Carhhart Jacket). That person has been determined to be Antonio Sherrod because it was suppose to be Dawn Ward's car, in which, in her car he was always a passenger. The affidavit from Sherrod proves Ward car was not involved in the crime.

The issue at trial was descrepancy in the eye witnesses identification as to who killed Prendergast. Trial counsel argued that Derrick Crawford was responsible for the death of Prendergast.

The Government argued the following to the jury to prove the shooter who exited the car was Sherrod:

T. Tr. 1438

This case is about whether the person who got out that car committed a murder was him. And on that question, there is no doubt.

T. Tr. 1440.

You can look for yourselves; the person who got out of that car with the black hoodie matches the description of the defendant.

The jury was able to rely on blurry photo's from the camera, speculative arguments in which linked Sherrod to being the person who exited the Intrepid. Under _Schulp v. Delo_, 513 U.S. 298, movant asserts

(15)

"actual Innocence" of violating any federal law under the principles of Sawyer v. Whitley, 505 U.S. 333, 339, 120 L.Ed. 269. 112 S.Ct 2514. Enhancing the video tapes will prove counsel failed to properly investigate the other suspect; prepare for trial, and enhancing the video's will also prove the eyewitnesses were not accurate in their identification. The two witnesses who identified Sherrod before trial made statements of not being one-hundred percent sure of their accuracy. On the night of the shooting, Regan said the following, "I don't think I could identify the guy who shot Steven." Nearly nine months after the crime, she identified me Sherrod as the culprit. Another witness was Shay Guttendorf. She told officers on 12/16/03: "Just by looking at these picture's I'm not sure, but if I saw him in a standing position, I'll be able to make an identification."

In the instant case Habeas Rule 6 (a) will be revelant to granting discovery, because, had the jury known Derrick Crawford was responsible for the murder, Mr. Sherrod wouldn't have been convicted for the crime. Counsel deprived the jury of direct evidence that could have assisted them in their deliberations. Payne v. Bell, supra, 89 F. Supp. 2d at. 970, 972, 975 ( because "petitioner need not show that the additional discovery would definitely lead to relief," and "need only show good cause that the evidence sought would lead to relevant evidence regarding his petition," IF Sherrod is furnished the video tapes he'll be able to prove facts to support his allegation of " Ineffective Assistance of Counsel"; also, he'll be able to show Counsel's lack of preperation for

(16)

trial. Also, Sherrod will be able to demonstate beyond a
reasonable doubt, Derrick Crawford was the person who exited
the Dodge Intrepid wearing the (Blk Carthart Jacket).

## DNA EVIDENCE

At trial counsel for Sherrod hired a Mitochondrial
DNA Expert Name: Dr. Terry Melton. She came to the conclusion
that Sherrod could not be excluded as a source to the hair
found on the (black Carthart Jacket). Also, she testified that
she could only include or exclude; she wasn't able to say virtually
for sure if the hair belonged to Sherrod.

Counsel for Sherrod had him under the impression that
it the time testing was done on the hair sample, DNA testing
was not as sophisticated. Upon information and belief, sherrod
believes such DNA testing was possible at the time of trial,
DNA testing that could identify a particular person virtually for sure.

Instead of the earlier method of testing hair samples,
which at most can suggest gross similarities or dissimilarities,
DNA testing can now demonstrate to a moral certainty whether
the hairs and sweat on the jacket belonged to Sherrod,
or whether it did not belong to Sherrod.

Dr. Melton only tested one hair off the black Jacket. The
additional hairs and sweat haven't been determined to belong to
Sherrod, and neither the hair Dr. Melton tested originally con-
clusively identified Sherrod as the source. Retesting the sample
Dr. Melton analyzed under the recently developed technique
for DNA, (Nuclear testing) would be helpful to Sherrod under

(17)

the provisions of the Sixth Amendment to the United States Constitution. Retesting of the hair may demonstrate conclusively that the hair was not Mr. Sherrod's. Failure to retest the sample, and the additional hairs and sweat on the scientific evidence today constitues a denial of due Process under the terms of the fifth Amendment of the United States Constitution.

Assuming, as Mr. Sherrod believes to be the case, that DNA testing will demonstrate that the hairs and sweat on the Jacket was not Mr. Sherrod's, and given the centrality of the single example of evidence presented to the jury, a denial of due process occurred by a combination of ineffective assistance of counsel and / or failure to conduct more advance DNA testing violated Sherrod's Constitutional rights.

It is submitted that in the contex of the instant case, good cause exist as required by Rule 6(a) of the rules governing 28. U.S.C. 2255 cases. *Bracy v. Gramley*, 117 S. Ct 1793 (decided June 9, 1997) And / or the All Writs Act, 28. U.S.C. 1651.

DNA hair evidence is relatively recent scientific practice. See *Lasch v. Welch*, 1997 WL 536330 (Superior Ct of Conn. Aug. 15, 1997) perhaps because of the replacement of RFLP method of testing by PCR (polymerace chain Reaction) baed Methods. PCR testing both " is much quicker and may be used on much smaller samples of DNA, such as hair samples." *People v. Leonard*, N.W. 2d — 1997 WL 405350 (July 18, 1997). Federal courts have, however, admitted such

testimony. <u>United States v. Bullock</u>, 71 F. 3d. 171, 173 (5th Cir. 1995), although not invariably, <u>see Williamson v. Ward</u>, 110 F. 3d. 1508, 1520, n. 13 (10th Cir. 1997) (concern about the reliability of hair evidence — unclear if DNA evidence or other comparative testing involved.

<u>Toney v. Gammon</u>, supra, 79 F. 3d. at 700 (district Court abused discretion in denying petitioner's Rule 6 (a) motion to conduct DNA testing of exhibits prosecution introduced at trial in order to show that trial counsel "was ineffective for failing to pursue.... claim of mistaken identity or to obtain state's evidence so as to conduct scientific examinations").

Wherefore, Sherrod request that this Court Grant Leave to conduct said tests in this motion under the terms of Due Process of the fifth Amendment to the United States Constitution. Granting additional DNA testing would be consistent with 18 U.S.C. 3600 — Chapter 228 - Post Conviction DNA Testing.

III. The Defendant Waived The Right To Challenge The District Court's Supplemental Instruction To The Jury, Where He Suggested And Agreed With That Instruction

The defendant argues that the district court plainly erred in failing to give an adequate supplemental instruction to the jury during its deliberations. (Def.Br.41-49) The defendant ignores, however, that he not only suggested the language of the district court's supplemental instruction, he also specifically agreed with the instruction that was given. His claim is therefore waived and not subject to appellate review.

A. Standard of Review

Ordinarily, a trial court's decision whether to provide supplemental instructions to a deliberating jury is reviewed for abuse of discretion. *United States v. Sims*, 329 F.3d 937, 942 (7th Cir. 2003); *United States v. Bitterman*, 320 F.3d 723, 728 (7th Cir. 2003). Where, however, a defendant expressly agrees with the decision to give, and the language of, a supplemental instruction, he waives the right to challenge the instruction on appeal. *United States v. Askew*, 403 F.3d 496, 505 (7th Cir. 2005); *United States v. Lakich*, 23 F.3d 1203, 1208 (7th Cir. 1994).

B. Analysis

The defendant argues that the district court erred in issuing a supplemental instruction to the jury during its deliberations. (Def.Br.41-49) He contends that

44

the district court failed to properly answer the jury's question concerning the intent requirement of the car-jacking offense. (Def.Br.41-49) In advancing this claim, the defendant attempts to ignore his explicit agreement with that instruction and requests that this Court review it for plain error. (Def.Br.42) Because the defendant agreed with the instruction, however, there is simply no error, plain or otherwise, for this Court to review.

During the conference in response to the jury's questions, the defendant expressly stated that he did not believe that it was proper for the district court to provide an additional instruction. He even requested that the district court "tell [the jury] that they have been provided with the instructions in this case, and they should refer to those instructions." (Tr.1492) The district court granted that request and instructed the jury that it had been provided with sufficient and complete instructions, and that it should review all of the instructions as it continued its deliberations. (R.68)

It is hard to imagine a clearer example of waiver of a challenge to a jury instruction. Accordingly, "[c]onsidering [the defendant's} conduct during the conference[] with the judge . . ., [he] has no basis for appeal now." *See Askew*, 403 F.3d at 506 (finding identical responses to jury's questions resulted in waiver of any challenge to supplemental instruction); *see also Lakich*, 23 F.3d at 1208

45

(defendant waived any challenge to the supplemental instruction because his attorney agreed to the instruction); *United States v. Collins*, 223 F.3d 502, 509 (7th Cir. 2000) (holding that defense counsel's agreement to instruction resulted in any claim being "affirmatively waived" and "not subject to appellate review at all because there is technically no 'error' to correct").[6]

---

[6] The defendant also attempts to again challenge the elements instruction for the car-jacking offense by suggesting that it failed to adequately address the intent issue. (Def.Br.41-42) As established in the next argument, however, the defendant also agreed with the language of that instruction, so he has no basis to complain about it now. Moreover, as this Court noted in *Askew*, given the defendant's agreement with the supplemental instruction, "he has effectively waived the related argument that the [] instruction with which the jury was initially charged was flawed in such a way as to warrant a new trial." 403 F.3d at 496 n.3.

46

E-FILED
Monday, 25 August, 2008  02:47:08 PM
Clerk, U.S. District Court, ILCD

# AFFIDAVIT
# ANTONIO SHERROD

I, Antonio Sherrod, swear under the penalty of perjury to the following facts in this affidavit:

1.) When the Court appointed J Steven Beckett and Carol A. Dyson to represent me, I advised both attorney's that I had vital information regarding the Prendergast murder that was on video surveillance. I reported to both Attorney's that a female friend of mine's name Kristina Kirchner had rented me a car from Enterprise in Bradley, Bourbonnae. I advised both attorney's that the car had been rented weeks before the murder occurred. Also, I reported to the attorney's that it was very imperative for the both of them to bring the video tapes to Paxton County Jail so I could show them something. I did. I showed them the Gold Intrepid that was on tape, which neither the prosecution knew nothing about, because when the crime took place Detective Lowman sent the tape to the F.B.I lab in Quantico, Virgina to be enhanced. No one was focused on the Intrepid with the shooter exiting it wearing the same clothes witnesses identified, also that was located with the murder weapon.

2.) I advised both attorney's that I was not respon-sible for the murder. I reported to them that it was Derrick Crawford exiting the Intrepid wearing the black CartHart Jacket. To prove to my attorney's that Joe Taylor had conspired with Larry Gray to say I stole their gun; I advised my attorney's of a phone conversation I had with Derrick Crawford, while my son mother (Naomi Jordan) and my brother

(Donald Sherrod) was on the phone. On these 3-way phone calls, Derrick Crawford is being told by me that I'm gonna have to give him up in order to prove I didn't do it. Also, I'm telling Derrick Crawford that he's the only one who can prove Yaddi (Joe Taylor) was there when the crime took place, because the camera have his face. (Derrick Crawford's) face.

3.) Counsel came to Paxton County Jail and got a copy of the phone conversation I had with Derrick Crawford about the murder and the murder weapon.

4.) After Counsel learned of this information, they sent their Investigator to Kankakee High School to speak with Naomi Jordan. And she advised them of the contents of the conversation she heard while being on the phone with myself, Donald Sherrod, and Derrick Crawford. She was supposed to come to court to testify in my behalf. Had Counsel called Naomi Jordan and Donald Sherrod, they would of had to introduce the tape conversation I had with Derrick Crawford, and the jury would of heard him admitting to being the person who exited the car. This evidence would have shown Mr. Gray lied also.

5.) Counsel informed me, while trial was taking place, that he wanted the Government to present the false theory about Dawn Ward's Intrepid. Steven Beckett admitted to me that, "once the Government make their theory of the case I'll prove it to be false with Kristina Kirchner testimony." Beckett never called Ms. Kirchner to testify like he said he would. Counsel knew both ways that; Ward didn't own the car on tape, and Kirchner did. Counsel informed me that he would call my alibi witnesses to establish the fact, that, Derrick Crawford dropped me off before going off in the Dodge Intrepid. Counsel refused to call my alibi witness at trial.

6.) Counsel informed me that he had a 911 tape in which he would introduce to prove Shay Guttendorf was not accurate in her identification. Counsel said, on the tape ms. Guttendorf cannot describe the shooter face to the 911 operator. Nevertheless, counsel never admitted the 911 Tape to the jury.

7.) It was Shoe prints on the backseat of Prendergast's truck, which wasn't his, and also, counsel said he would introduce the prints to prove it was a size 12, and it was a fresh print, and it would be used to show someone with a size 12 was present. Because, I only wear a size ten.

8.) Counsel swore to me that he would get funds from the Court to enhance the face of the shooter as he exited the car. Counsel never did so. If Counsel would've enhanced the tape the face of the shooter would have been viewable for the jury.

Further Affiant Sayeth Not.

Antonio Sherrod.

## Naomi Jordan: Affidavit.

I, Naomi Jordan, swear under the penalty of perjury to the folling facts thats set forth in this affidavit:

1. Some time in mid-2004 Sherrod and I were on the phone while he was incarcerated at Paxton County Jail.

2. As we were talking Derrick Crawford called Donald Sherrod phone, so Donald called Derrick on his 3way calling, now its all four of us on the phone together.

3. Sherrod and Derrick began to have a conversation about the Amoco gas station murder. During this conversation, Sherrod told Derrick, "I need you to talk to my lawyers, because Yoddy and Lep is saying, I stole their gun, and they are lying. The only person who can prove that Yoddy was there is you, because the camera has your face as you exited the car."

4. I can't quite quote every word Derrick said, but I do know he said something to the effect of not denying that it was him, and he would speak to Sherrod lawyers.

5. I've told this information to Sherrod's investigator when he came to my highschool in Kankakee. And

took a statement for me.

5. Had I been called to court, I wouldn't testified to the conversation I over heard between Derrick Crawford and Sherrod.

Naomi Jordan,
NAOMI JORDAN.